FIRST NAT. BANK OF CITY OF BROOKLYN v. JENKINS et al.

(Supreme Court, Trial Term, Kings County. July 13, 1911.)

1. ACTION (§ 50*)—MISJOINDER—CONTRACT AND TORT.

An action ex delicto against an estate cannot be joined with one ex contractu on a joint liability of decedent and another.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 511–547; Dec. Dig. § 50.*]

2. PLEADING (§ 406*)—MISJOINDER OF CAUSES OF ACTION—WAIVER—FAILURE TO DEMUR.

An objection of improper joinder of causes of action is waived by failure to demur.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 1370; Dec. Dig. § 406.*]

3. BONDS (§ 60*)—CONSTRUCTION—EFFECT OF CONDITIONS.

Code Civ. Proc. § 1915, provides that a bond containing a condition that it shall be void upon the performance of any act has the same effect for the purpose of an action thereon as if it contained a covenant to perform the act specified in the condition. The president of a national bank who

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

largely controlled its policy purchased stocks in violation of his duty so as to make him liable to the bank for resulting loss. The national Treasury Department, after an examination, required the bank to immediately dispose of the stock, which could not then be done without loss, whereupon, pursuant to an arrangement with the department, the president and his son executed a bond to the bank, prepared by the Treasury Department, conditioned to be void if within two years the bank should sell the stocks and realize therefrom their cost, whereupon the Treasury Department withdrew its demand for the immediate sale of the stock. *Held*, that the bond, construed in view of the statute, was equivalent to a covenant by the obligees to sell the stock within two years for the bank, so that the failure of the bank to itself sell it within that time was not a failure to perform a condition of the bond so as to bar an action thereon by it.

[Ed. Note.—For other cases, see Bonds, Dec. Dig. § 60.*]

4. BONDS (§ 27*)—CONSIDERATION—SUFFICIENCY.
   The liability of the president to the bank after his violation of duty in purchasing the stock was a sufficient consideration for the bond.

   [Ed. Note.—For other cases, see Bonds, Dec. Dig. § 27.*]

5. BANKS AND BANKING (§ 261*)—NATIONAL BANKS—ULTRA VIRES ACTS.
   The execution of the bond was not an agreement by the bank not to sell the stocks for two years whatever might be their market fluctuations, thereby making the bank to speculate in stocks, so as to be ultra vires on the part of the bank, especially when considered as a covenant as prescribed in Code Civ. Proc. § 1915.

   [Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 261.*]

Action by the First National Bank of the City of Brooklyn against John G. Jenkins, Jr., and others. Judgment directed for plaintiff. See, also, 141 App. Div. 922, 125 N. Y. Supp. 1119.

Morgan J. O'Brien and Robert T. Wilson, for plaintiff.
Louis E. Bomeisler, for defendants.

BLACKMAR, J. On the 25th day of June, 1907, the plaintiff, a national bank, owned about 8,564 shares of the capital stock of various railroad, banking, and industrial corporations. These stocks had been purchased by the plaintiff at various times since February, 7, 1898, through the agency of John G. Jenkins, Sr., who, during all such time, was a director, the president, and the controlling spirit of the plaintiff. They had cost $666,848.75, and, at the prices quoted, in the market, showed an apparent loss of $262,953.75. These transactions were all ultra vires of the bank. Jenkins, the president, violated his duty in procuring the purchases, and was liable to an action for damages to the full extent of the loss occasioned to the bank, except in so far as a portion of the claim against him may have been barred by the statute of limitations.

When matters were in this condition, the National Treasury Department, after an examination, required an immediate disposition of the stock by the bank. This the officers of the bank were loathe to do in the state of the market; and, after much correspondence and negotiations, arrangements were made whereby Jenkins, the president, and his son, John G. Jenkins, Jr., executed and delivered to the bank a bond prepared by the Treasury Department in the

penal sum of $536,000, conditioned to be void if, within two years, the plaintiff should sell the said stocks and realize therefrom the full sum of $673,498.75, stated in the bond as the cost of said stocks. The Treasury Department withdrew its demand for an immediate disposition of the stock, and the plaintiff thereupon held the stocks for the two years, during which time they could not be sold at cost, and then sold them for $444,771.75, making a loss of $222,077. Meanwhile, on March 12, 1908, John G. Jenkins, Sr., the president, died. This action is brought against the executors of the will of John G. Jenkins, Sr., and John G. Jenkins, Jr., to recover the amount of such loss.

The defenses opposed are that the bond was given without consideration; that the agreement regarding the disposition of the stock, of which the bond was a part, was ultra vires of the bank; that the plaintiff failed to perform the conditions of the agreement on which the bond was delivered, in that it did not sell the stocks within two years; and that as to a large portion of this claim the cause of action against John G. Jenkins, Sr., for damages was barred by the statute of limitations. A jury having been waived, the facts as above stated were stipulated, and the case submitted to the court.

I think the cause of action pleaded is the obligation of the bond. Incidentally facts are stated which, by a liberal construction, show, or rather indicate, that a cause of action at law existed on June 25, 1907, against John G. Jenkins, Sr., for damages caused by his violation of his duty as director and president. But these allegations are also relevant to a cause of action on the bond. I cannot assume that the pleader intended to violate the plain provisions of the Code of Civil Procedure regarding pleading by uniting two causes of action—one ex delicto against the estate of the decedent, and one ex contractu on a joint liability of the decedent and the other defendant.

[1] If this was the complaint, it was fatally demurrable.

[2] True, the objection that causes of action are improperly united is waived by failure to demur; but the defendants, having construed the complaint according to its obvious purport and interposed their answers, should not on the trial be met by the suggestion that another cause of action ex delicto against part of the defendants lurks in the allegations of facts apparently introduced as matters of inducement and explanation to a cause of action properly stated ex contractu against all. I shall therefore treat the case as an action on the bond. This renders it unnecessary to consider whether such a cause of action for neglect of duty of a director of a National Bank survives against his executors, or whether any portion of the claim is barred by the statute of limitations.

[3] Section 1915 of the Code of Civil Procedure provides that a bond in a penal sum containing a condition to the effect that it is to be void upon the performance of any act has the same effect for the purpose of maintaining an action thereupon as if it contained a covenant to perform the act specified in the condition. The bond in suit is peculiar. Usually the condition is to be performed by

the obligors. Therefore the provision of the Code that it is to have the same effect as a covenant to perform the condition is easily applied. In the case at bar the bond reads as if the condition was to be performed by the obligee. The bond provides that the obligors, Jenkins, are held and firmly bound to the bank in the penal sum of $536,000, if the bank, the obligee, does not sell certain ·stocks at cost within two years. This peculiar wording probably resulted from the knowledge of both parties that one of the obligors was president of and controlled the action of the obligee. The parties contemplated that Jenkins, as president of the bank, would control the time of sale of the stocks. The delay in the sale was supposed to benefit both Jenkins and the bank. The real object was to· ·fend off the Treasury Department. Jenkins signed the bond for that purpose, and the bank accepted it because Jenkins so willed. In the minds of the parties, therefore, the condition avoiding the bond if the bank sold the stocks at cost within two years was equivalent to a condition avoiding it if Jenkins sold the stock. The bond must be construed for the purpose of maintaining the action as the statute requires; and it therefore is equivalent to a covenant on the part of the obligors to sell these stocks at cost within two years on account of the bank. If the statute did not prescribe the rule of construction, I should think that the bond meant that the obligation was void if the bank was able to sell the stocks at cost within two years. But the statute does prescribe the rule, and it must be followed. The obligors were entitled to two years' time to perform this covenant, and a prior sale by the bank would have released them from their obligation on the familiar principle that, where one party to a contract voluntarily and purposely makes it impossible for the other to perform, such other party is released. The failure, therefore, of the plaintiff to sell within two years is not a failure to perform a condition of the contract, and is not a defense.

[4] As to the consideration for the bond, it is sufficient to say that the liability of John G. Jenkins, Sr., to the bank for violation of his duty in the purchase of these securities is a consideration sufficient to support any lawful contract to secure satisfaction to the bank.

[5] The defendants claim that the bond is void as part of a contract ultra vires of the bank. Jenkins, the president, had involved the bank in the payment of $666,848.75 upon ultra vires contracts for the purchase of stocks. Whether such contracts had vitality enough to pass the title of these stocks to the bank it is unnecessary to decide. Both Jenkins and the bank in the contract which is the basis of the action assumed that the bank owned the stocks. It was the duty of both to repair any loss occasioned by these illegal contracts. An immediate disposition of the stocks would have entailed a loss of upwards ·of $250,000. The bank accepted the obligation of Jenkins and his son in effect to pay the loss to the extent of $536,000, unless the stocks were sold at cost within two years. To sustain their point, the defendants assume that the bank agreed to hold these

stocks subject to market fluctuations for two years. They then characterize this as "crass speculation." From this they stretch toward the conclusion that the bank had no power to agree not to sell the stocks, and that the bond given as a consideration of this promise is void. But I find no agreement on the part of the bank to hold the stock for two years. The only effect of selling within two years for less than cost would be to avoid the bond. The only consideration of that character suggested either in the bond or in the evidence is that the bank would not immediately sell. The consideration for the bond was the existing liability of the defendant, Jenkins, and not any agreement, express or implied, not to sell for two years. I can see no reason why the bank could not accept the obligation of the president, Jenkins, joined in by his son. Neither can I see how the fact that the obligation is conditioned upon the failure to sell the stocks at cost within two years affects its validity. It would be strange if a man who by his conduct as director had caused the bank a loss of upwards of $250,000 and who was liable for such loss could escape liability by giving a bond to pay it, even if the bond gave him two years to make the loss good. This result, the defendants claim, flows from the application of a doctrine formulated by the courts and strictly enforced in the case of banks to protect the stockholders and depositors. They would use this doctrine to accomplish a result in direct conflict with its very purpose. But it is enough to say that it was not ultra vires for the bank to accept the conditional obligation to secure the loss which one of the obligors had by violation of his duty inflicted on the bank; and when the bond is read with the legal effect of a mere covenant, as prescribed in section 1915 of the Code of Civil Procedure, this conclusion becomes plainly obvious. I hold, therefore, that the defendants are liable on the bond.

I direct judgment for the plaintiff for the amount claimed with costs, and on the settlement of the findings I will receive any memoranda as to the allowance of interest and the date from which it should be allowed. My present impression is that interest should begin to run from the 25th of June, 1909, for the obligation on the bond did not arise until that date.

Settle findings on notice.